All right, we'll hear the first case, Hodges. May it please the Court, William Gordon. First, I want to make clear something that the appellee briefs seem to make cloudy. In this case, as you know, Shell Hodges has brought claims against the nurse she alleged sexually abused her, that nurse's husband, Stephen Nicholas, and the school in its entity forms, the Glenholme School and Devereux Foundation. There are claims against the school and Devereux for supervisory negligence and for breach of fiduciary duty with regard to the conduct of Claudia Nicholas. Both in the original complaint and in the first amended complaint, we alleged that the school knew that Claudia Nicholas was a bad actress and that she was not safe to have around children and they were negligent in supervising her. And they breached their fiduciary duty with regard to her. We made no claim against Devereux or Glenholme with regard to the conduct of Stephen Nicholas, her husband, because we had no evidence and no notice that we could say they had with regard to his conduct with the young Ms. Hodges who was 13 and 14 years old when she was sexually and, if you look at the complaint, physically abused by Claudia Nicholas who was the primary perpetrator here. So there is no claim that either entity had notice of Stephen's bad conduct. Now, one of the things that the appellees seem to be trying to say is we made this up. And why did they say we made this up? Because there's a 30-year statute of limitations in Connecticut for sexual abuse of children. Do you agree you had until August 1, 2015? Under the 577D, yes. And she contacted us in Boston. We're a Boston firm, and we engaged a firm we had worked with before, and it's a good firm, in Connecticut, because when you go to other states, the service rules change, and we relied on them, and they read the civil rules in federal court, and on its face it says the action commences. So they thought by filing the 30-year period would stop. That is not what the law is under Erie, and we served after that. So to bring a claim under that statute, we're out. And when we saw the defendant's motions to dismiss and we looked at the cases, we said they're right. But what we pled in the original complaint, and it shouldn't have been a surprise to the defendants, given the Martinelli case that was out there, we alleged originally that in, and you can find it in the record appendix, A18, paragraph 23, this is the original complaint, that defendant Claudia Nicholas and Stephen Nicholas misrepresented and concealed from the plaintiff the wrongful nature of the explicit sexual behavior in lewd and lascivious conduct and that such explicit sexual behavior in lewd and lascivious conduct could harm the plaintiff. We alleged that originally. Are you saying that she wasn't aware that the conduct, in your view, was illegal, or are you saying that she wasn't aware of the facts? In other words, she was aware, wasn't she, that she had been placed in imminent and reasonable apprehension of harmful and offensive contact? That comes from your amended complaint. She was aware these acts occurred, but she was 13 years old when this started. It ended when she was 14. And what we have tried to explain, both at the district court and more fully here, is when you're 13 and 14 years old, you have to develop coping mechanisms, and we're not the only ones to say this. Other courts have said it. That's why, as a matter of policy, it seems to me this is more of a question. But that's why, as a matter of policy, Connecticut has given people in her position 30 years from the age of majority. That's true. So doesn't that address this concern that you, I think, were just alluding to? What does she need to know? Under Connecticut law, the statute doesn't accrue until you know there's a causal connection to harm. And what other jurisdictions have found is when this happens to a child, they don't understand that it causes harm. They don't understand that, but that is exactly what animates the policy, the 30-year period. I mean, usually we don't have statutes of limitation for 30 years. This is 30 years to accommodate precisely the concern that you're articulating, isn't it? As Martinelli from this court explained, when the statute was 17 years, they said a couple of things. Martinelli, Ben said a couple of things. First, that when it's a longer statute of limitations, there is less harm if there's a fraudulent concealment because it's not extending a short period of time for which that is thought more valued. And so in Martinelli, they say that the length of the long time does not necessarily preclude bringing it under fraudulent concealment. And Martinelli— So, yes. So there is the fraudulent concealment out, as you've argued. But as I understand it under Connecticut law, it's not just that the defendant's concealment was purposeful. It's got to be—there's got to be a nexus. That is, it's got to be for the purpose of obtaining delay on the plaintiff's part in connection with filing the complaint. That gets to the Rule 15 issue when we told— Is that correct, though? Yes. And what we told the district court was we could amend the complaint to say that notice was given to the school at that time about Claudia's conduct and she was fired and with the intent of this being covered up and that the plaintiff never being noticed. They never reached out to the family. They didn't know the extent of the problem here so she could get therapy then so that for the next 30 years she didn't have this problem. Can I ask you this, if I might? Yes. I understand that in your reply brief you make the causal connection argument. Yes. Could you help me? I can't find in your opening brief or in the record itself a single instance where you make that causal connection argument which you make in the reply brief. Am I missing something? We explained the facts to the judge. We may not have laid it out as neatly as we could have. This is why if we had been given an opportunity to amend the complaint and fully brief before the district court why there's a causal issue here and why she did not understand she didn't discover the cause of the problems she had for those 30 years was this first what she thought was a love relationship. Children have to put this in some context. Let me ask you about this procedural aspect, though. As I read the district court record, you file a complaint, defendants answer, and they raise a statute of limitations. Then you file an amended complaint, and in paragraph 28 of that amended complaint for the first time you raise 52595, fraudulent concealment statute, and you plead the reasons why that statute provides you relief. I know there's a dispute here about whether the district court was correct in saying that Martinelli hasn't been adopted by the Connecticut courts, but those cases including Martinelli are summary judgment cases. The pleading cases in the federal courts, it doesn't seem to have decided that issue who's got the burden of pleading the elements of 52595. Even if it's on the defendant, you pled those allegations in paragraph 28, the specific allegations, why you benefit from that statute. So can't we look at those allegations to see if you've made out a sufficient basis for invoking that statute? Yes, and also what we offered the district court in terms of how we could amend the complaint. The second time? Second time. Why would you amend it a second time? The way it worked was you filed the complaint. Defendants said statute of limitations. You said, okay, 52595. We want to file an amended complaint, Your Honor. Can we do it? We want to invoke fraudulent concealment. Yes, you can. Here's your opportunity. You file an amended complaint. You include a new paragraph 28 which says this is why we can benefit from 52595. This is why there was fraudulent concealment there, and you've got a long paragraph of why you can benefit from the statute. What's missing in the pleadings? What's missing was what we thought from what Judge Underhill asked is where's the evidence that the school acted to delay? Where's the evidence? And maybe we could have elaborated a bit more. This is a motion to dismiss. Yes. Where was the allegations? Yeah. Where were the allegations? Paragraph 28. That's what we thought, and we thought that that would be enough. We don't have to, as we've laid out in the briefs, we do not have to plead defensively against an affirmative defense. But given that 577D, the 30-year statute, could not apply here, we've conceded that, then the only way this case survives is if there was fraudulent concealment. And the only way fraudulent concealment can apply here, as a number of other jurisdictions have found, and under Connecticut's discovery rules with regard to you need to understand that your harm was caused by this. And Connecticut has not developed, for instance, I'm very familiar with Massachusetts. The 264C we cite used to be a 3-year rule. So there were a number of cases that said, when does the victim make the connection to understand their harm, because that's when it accrues. And that developed over a number of years, and so I'm very familiar with that. In Connecticut, instead of a 3-year rule, for a long time they had 17 years and 30 years. So people weren't bringing the cases. The law wasn't developing. The only case that really touched on this was Martinelli, and this now, because of the way it was filed, again, and the facts of this case indicate that it is fraudulent concealment, because when you sexually abuse a 13- and 14-year-old, they have to cope with that in some way. And what that results in is there's no understanding that all those psychological problems she has the next 30 years were caused by this. Until she tells a friend in 2013, you know, I had this relationship with a school nurse. How old were you? Thirteen. Then he tells her that's abuse. She had no understanding. She did not discuss it. Do you agree that Rule 9b, at least in connection with Paragraph 28, the fraudulent concealment paragraph, applies? Yes. I think 9b probably does apply. And that's why, in part, Judge Underhill, as I understand it, concluded that you needed to plead with a little bit more specificity. The nexus between the fraudulent concealment and the litigation, so that the reason the school concealed was to delay the filing of a complaint. Was that his rationale? Forget whether it's right or wrong. Was that not the district court's rationale? I think he did not think there was enough here, and he could not wrap his mind around the idea that if these hacks happened, there's no way she could forget it. He was thinking in terms of repression. And memory repression is total forgetting. Suppression in states where there's discovery is you never really forget it, and that's 80% of the cases. They never really forget it, but they never understand the causal connection in the suppression cases. And other jurisdictions have found, well, they can't accrue because you have no appreciation of the cause of the harm. And so what happens here is you have a 13- and 14-year-old brutally sexually abused, just puts it aside as, well, that was my first relationship, my first sexual relationship. And until somebody tells her 30 years later, does she make the causal connection? And that's really how we see the case. And as I started at the very beginning, this was not something new or fabricated because we allege they had hid it from her in the very first complaint where we didn't think we had to plead fraudulent concealment. When we saw the motions, we understood. You'll have three minutes in rebuttal. Thank you. Thank you. May it please the Court, Attorney Jonathan Cosienda for the Glenholm School and the Devereux Foundation. I would like to address first the issue concerning the causal connection that was just raised. There is more to this case than merely an understanding of whether there was a psychological or an emotional injury as a result of the alleged facts. The facts on themselves, on their face, are horrific facts. However, there's also allegations of physical abuse, physical actions that occurred. Whether there's an understanding of emotional or psychological damage, there absolutely was understanding of physical injury from those acts. And so the causal connection of understanding or delayed understanding of the emotional or psychological impact does not speak to the physical, in which case Ms. Hodges was aware of her claims from the moment they occurred and enough to understand that a claim could exist, certainly when she reached the age of majority, which is what the 30-year statute of limitations contemplates. But there is no dispute that the appellate missed the statute of limitations in this case and there's no dispute that she was aware of the necessary facts to bring that case because she did in fact bring the complaint to the court and filed it with the facts for the underlying lawsuit. It was only after the statute of limitations had been discovered to have run did they bring the fraudulent concealment claim to the attention by pleading it in paragraph 28. As a result of that, the next question is when did she learn of those facts? When did she become aware that she had such a claim? And there is nothing in the complaint, Your Honors, that at all indicate when she became aware of the individual issues she claims allows her to invoke the fraudulent concealment statute. I take your argument that the allegations that Glen Holm knew that Claudia Nichols had sexually abused the plaintiff was vague and conclusory to survive a motion to dismiss. I understand that argument. But there's the case of Martinelli, right? And I quote, it is sufficient to show that the defendant had and concealed actual awareness of facts that created a likely potential for harm. And here the amended complaint says that and alleges that Glen Holm had information and I'm quoting that Claudia Nichols had inappropriate relationships with others at Glen Holm and had engaged in conduct involving serious boundary violations. Now, why isn't that enough? Two reasons, Your Honor. First, Martinelli, I don't believe, has been adopted and I don't believe that the Connecticut Supreme Court has allowed, has agreed that there should be a burden shift. But separate from that, Your Honor, those allegations do not speak to the type or nature of the allegations that is alleged in the complaint as to what occurred between Claudia Nichols and Ms. Hodges. The vagueness relates specifically to the inappropriate relationship with others and notably absent from that allegation is with minors. Yet, the plaintiff does include the word minors in other allegations concerning what Ms. Nichols' behavior and her reputation was by claiming that she was a danger to minors. Therefore, that absence, I think, speaks volumes. I don't think that's a mistake, Your Honor. Others, as Judge Underhill had pointed out in his decision, they could have been adults, in fact. They very well may have been. And that does not necessarily put anyone on notice that there's a danger to minors. The issue that someone is a danger to minors is a conclusory statement. There's no facts that specifically identify why someone of an employer situation should expect or believe that a nurse would be a danger to minors. What is it? The question looms, what is it that she did or didn't do to suggest that something ought to have been done by the employer in protection of Ms. Hodges specifically or other minors in general? What was the student population at the Glenholm School, though? At the school, there was a boarding school, Your Honor, and I believe it was within a few hundred. But there were a lot of minors. And what was the nature of the program there? It was for students with emotional difficulties, wasn't it? Correct, Your Honor. They ranged from emotional difficulties, essentially behavior issues, as well as psychological and emotional diagnoses under DSM. And some were just merely difficult children who had behavior issues because of experiences they may have had in the home, but there was no particular psychological or mental health diagnosis. But it was a specialized school for addressing those kinds of issues. It wasn't a school like Kent School or something that had some students that needed some treatment. This was a school dedicated to those students with such issues, right, whether they were minors or not. That's correct, Your Honor. The other allegations that were alleged in the complaint also are as vague as those are, and they lack specificity or particularity required under 9b. And the other issue that is missing with particularity is when the Glenholm School or the Devereux Foundation was aware of these things. Alleging merely that minors were a danger because of missed nickels does not identify when the school became aware of those. The statute of limitations ran at age 30. If Miss Hodges became aware of this before she reached the age of 18, there actually would be no tolling because the statute doesn't even begin to really run until she hit age 18. So there's a missing component to this, and the affirmative requirement is that the plaintiff plead sufficient facts to bring their matter past and invoking the fraudulent concealment statute, Your Honors. The other allegations in the complaint, such as boundary violations, do not identify what that is. Miss Nichols was a nurse. Boundary violations is a term that would be used concerning medical malpractice, would be a violation of passing, but what that is, Your Honors, and what constitutes boundary violations in a medical context can be anything, Your Honor. It doesn't necessarily mean sexual assault. There was this argument, though, that he wasn't given a chance to really flesh out these allegations, that we wanted to tell Judge Underhill more, allege more in our complaint about why we should benefit from the statute. Is that accurate, that they weren't given that opportunity? No, Your Honor. In fact, I disagree with that. There were multiple opportunities, and, in fact, not only did they have the initial opportunity to allege the facts when they filed their amendment complaint, they had the opportunity to propose amendments during oral argument, and after oral argument, after hearing what Judge Underhill requested of them and actually invited them to propose additional amendments before he reached his decision, a motion could have been filed seeking to further amend and add the allegations that, essentially, they claim they understood. Miss Hodges is in the position to know what those allegations were. I'm curious about one thing you said in answer to Chief Judge Katzmann's question relating to Martinelli. The first thing you said was that the Connecticut Supreme Court hasn't adopted Martinelli. Is that what you said? The burden shift, Your Honor, yes. In Iocurse, the Supreme Court identified that the burden shift was mentioned by the federal court and the Second Circuit. However, it did not pass whether or not it was going to adopt the federal prediction of whether or not there should be a burden shift. There's nothing one way or the other specifically on that issue. I disagree, Your Honor. And if you read footnote 8 of Iocurse, you'll note that the court considered Falls Church and the Iocurse case and commented that though they had opportunities and though there were aspects of the Martinelli decision in that regard before them in the appellate court at different times, the language they used in footnote 8 specifically said that they were not commenting on it at that time. During that opportunity, the Supreme Court could have brought forth their thought process or could have in the footnote even identified that there may be certain facts or certain fact patterns where it could be identified. Martinelli, which was back in 1999, that decision did not have as much guidance as we do today. Because of Iocurse, we now know that even despite Martinelli and the Second Circuit's ruling on that issue, the Supreme Court in Connecticut has still not adopted it, knowing that it happened, and that's essentially as of today, 18 years later. So given that opportunity, we know that I think that prediction, frankly, I think was probably not right. Although accurate at the time, I think we now know more and that the state court wouldn't have adopted it. Thank you. Thank you. May it please the court, Muri Thalman for the defendant appellee, Claudia Nicholas. In this case, Judge Underhill considered very carefully the issue of fraudulent concealment, and the issue was whether the plaintiff pled the elements of sufficient plausibility and particularity under Federal Rules 8 and 9b to toll the applicable statute of limitations. The judge came to the conclusion that after four decades of being an adult and being at least aware of the facts of what had happened to her, that the plaintiff, it strains plausibility that the plaintiff would not have at least been on what the judge called inquiry notice. And the judge also pointed out that even at the time that she was a minor, when there was this issue of Claudia Nicholas showing up at the Shelley home in the middle of the night, this all occurred in the 1980s, 81s. At that time, a sequence of events followed, which included a call by Mrs. Shelley to the school, making some inquiry, and also subsequently, not that it was connected, but that Claudia Nicholas left the employee of the school. So if there had been anything at that time, there would have been no question that some action would have been brought even before the statute began, the statute being the 30-year limitation period starting with when Claudia, when Mrs. Shelley achieved the age of 18, which was on August 1st of 1985. So considering all the facts that were brought out, considering the questions that Judge Underhill asked of plaintiff's counsel, if you were to amend your complaint, if you had anything lacking, what would you include in it? And the end result of it, reading Judge Underhill's decision, was that these proposed amendments were not sufficient. There was an apparent attempt to save the case having been served beyond the statute. Even the marshal didn't get it in time under Connecticut law. And as Judge Underhill pointed out, where you have a Connecticut law of statute of limitations that's contingent on specific dates, and the reason why we're in federal court here is because of diversity. Federal courts will bow to Connecticut law on this issue. But in any case, in this case, the judge found, first of all, that the plausibility factor was not reached, and that given the opportunity to save his case, the plaintiff first brought before the court the evidence or claim that there was additional information regarding this case that he had learned of after the complaint was brought, but before the First Amendment complaint. What the plaintiff didn't explain was why that was not incorporated into the First Amendment complaint. You don't dispute that your client never informed the plaintiff's parents of the alleged sexual abuse? That appears to be the case, that there was no information given to the parents. I just want to clear up what I think is a Scrivner's error in your brief. You say on page 23, the plaintiff does not allege that the defendants knew that the Nicklases had sexually abused her. But isn't your client a defendant? Yes. So are you claiming that Mrs. Nicklase had no knowledge of the alleged sexual behavior? Are you talking about Mrs. Nicklase or Shelly's mother, Your Honor? The mother. Claudia. There appears to be no indication that she did, and when she actually contacted the school, the allegations made in the First Amendment complaint do not indicate that these allegations or this inquiry, if that's what it was, involved any sexual contact whatsoever. Nothing is alleged in the complaint about that. All that was alleged was that she inquired about some concerns that her daughter had. Nothing is brought out in the complaint. And here's the other prong of this problem. One is the plausibility factor, because on the fraudulent concealment case, the concealment had to be of facts that were not known to the plaintiff, and the concealment had to be intentional, and it had to be purposeful concealment for the purpose of avoiding the statute of limitations. Looking at the time factors, after this midnight or late night journey to the plaintiff's house, there appears to have been no further contact between the two for the 30 years that passed, or 34 years that passed from that moment, so that there's no indication in the plaintiff's complaint or no factual statements that would indicate that there was an intentional purpose to avoid the statute of limitations. Thank you. Thank you. Good morning. Jeff Nicholas for the Nicholas Law Firm, for Steve and Nicholas. I just wanted to touch on a few brief points with regard to the fraudulent concealment allegations as to Steve and Nicholas. According to the plaintiff, dismissal is appropriate only if her allegations negated the elements of fraudulent concealment. As to Steve and Nicholas, they do. I believe Judge Underhill, in his well-reasoned decision, when he opined that the plaintiff's proposed amendments at oral argument negate her claim of fraudulent concealment against Steve and Nicholas. That was in the proposed amendment at the district court argument, where there was the claim that there was a letter discovered between her and Claudia Nicholas, meaning the plaintiff and Claudia Nicholas, and that he showed it to a supervisory authority, and that undermines the assertion that Steve and Nicholas attempted to conceal anything. Now, the proposed amendment is kind of a catch-22 because you can't have it both ways, and it implicates the Twombly plausibility requirement. She hasn't really reconciled the new account of Steve Nicholas as the discoverer of the abuse with the fact that he's the discoverer of the abuse that he then brought to the school's attention, and he participated in it himself. It just isn't plausible. We don't believe that she's adequately alleged her lack of knowledge of the abuse. The allegations were made with horrific specificity. They were physical. They were emotional. They were sexual. She had her head allegedly put in the toilet and was advised she would be further harmed if she told anybody, and I think this would lead to any 13-year-old, 18-year-old, 25-year-old, 46-year-old to know she was abused. The acts were overt, and I don't see how they could be concealed from her, and I don't believe it's plausible that she just figured it out when she was 46 years old. I think this is the type of claim that 9B claims are designed to resist. If fraud is so easily alleged— Does that take into account the possibility of a repressed memory? I think that the repressed memory is an effort to just shoehorn this case, and I think it's word salad and semantics. Isn't that consistent, as I understand it, with the Connecticut policy to prolong the period from 3 to 17 to now 30 years to account for the possibility that someone who's undergone that type of experience at a young age might have repressed the memories for a significant period of time? I agree with your questioning earlier where you had put in it, talked about the 30-year statute as taking into account that she had all of this time and that if the statute was missed, that the 30 years is essentially enough. I mean, and I don't think that this— If you have repressed memory, why is there a time limitation necessarily? But I don't see the repressed memory being alleged here with specificity, so I don't understand why we're talking about it. It's not alleged. There's no allegation in the complaint or the amended complaint with regard to repressed memory. Thank you. Thank you. Mr. Gordon. Thank you. What the school is missing is what is the knowledge that Chell Hodges had to have, and what we say is she did not discover the causal connection. That's what the law is in Connecticut in the cases that we cited in the briefs. She did not understand this caused her harm, and the school's argument that somehow engaging in oral sex and sexual intercourse with a 13-year-old is not physical injury is— I've done enough of these cases. That's not so. Sexual abuse is some of the most fundamental physical injury there can be. What about the argument that there was clear physical abuse apart from the sexual abuse and that she should have been aware of that physical abuse? In domestic abuse cases, we have adults who can't process the abuse because of the relationship. When you have a child, there aren't the mechanisms there. This is not a reasonable person who's going through reasonable life. This is a reasonable person exposed to unreasonable conduct. And so the mind gets affected. It affects the ability to appreciate that this conduct caused harm. And that, we would contend, is how the course of action does not accrue. You agree—I'm pretty sure you agree that the clock does not start ticking until someone reaches the age of majority, until they're 18. For the 577D, the 30-year statute, yes. But, again, you still have to understand to bring your action that you've been caused harm. And in Connecticut, we do this work. People come to us. And we know other lawyers who do this. If you look at it and you say, well, it's beyond the 30 years, it's a very expensive proposition to bring these cases forward. They don't develop in Connecticut, for instance, the way they did in Massachusetts when there was a very short statute of limitations, and you had to push this issue. You didn't in Connecticut. So the law was not that developed, except that if you look at the theory of the law that the Connecticut Supreme Court has articulated with regard to medical malpractice, there is an understanding of when does the course of action accrue. The Hamilton v. Smith case, where he knew he had cancer years before, and they said, well, that wasn't enough, even though he had been told he had an infection. So there is an understanding in Connecticut of the need for the action to accrue for the clock to start. And that did not happen in this particular case. Thank you. Okay. Thank you all for your arguments. The Court will reserve decision.